T.C. Memo. 2007-22

UNITED STATES TAX COURT

SHAHROOZ S. AND SHIDA S. JAMIE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18497-05.          Filed February 5, 2007.

Shahrooz S. and Shida S. Jamie, pro sese.

<u>Terry Serena</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  Respondent determined the following
deficiencies and penalties with respect to petitioners' Federal
income tax:

| Petitioner(s) | Year | Deficiency | Penalty I.R.C. Sec. 6662(a) |
| --- | --- | --- | --- |
| Shahrooz S. and Shida S. Jamie | 2000 | $478,890 | $95,778.00 |
| Shahrooz S. Jamie | 2001 | 137,839 | 27,567.80 |
| Shahrooz S. Jamie | 2002 | 200,138 | 40,027.60 |

The notice of deficiency for 2000 was addressed to both Shahrooz S. Jamie (petitioner) and Shida S. Jamie, his wife (Mrs. Jamie), and was based on a joint return that they filed for that year. The notice of deficiency for 2001 and 2002 was addressed only to petitioner. Respondent has agreed that Mrs. Jamie is entitled to relief as an innocent spouse.

The issues for decision are:

(1) Whether petitioner is entitled and limited to a $3,000 per year deduction for capital losses from his trading activity for 2000, 2001, and 2002;

(2) whether petitioner may claim net operating loss carryovers in 2001 and 2002 with regard to losses sustained in his transactions as a trader in securities in 2000 and 2001; and

(3) whether petitioner is liable for penalties under section 6662(a) of the Internal Revenue Code for substantial understatements of income tax.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts have been rounded to the nearest dollar.

Background

All of the facts have been stipulated as to petitioner, and these stipulated facts are incorporated in our findings by this reference. Petitioners resided in Clay, West Virginia, at the time that the petition was filed.

During the relevant period, petitioner was a licensed physician in Clay County, West Virginia. During the years in issue, petitioner also engaged in business as a "day trader" of securities, buying and selling on his own account the same securities on the same day or within a few days (trading activity). Petitioner engaged in the trading activity for the sole purpose of profiting from short-term fluctuations in the market price of securities. Petitioner did not have any customers for his trading activity, did not earn or attempt to earn any commissions with regard to his trading activity, and did not maintain a place of business for his trading activity. Petitioner did not earn dividends or interest from the securities in which he traded, and he did not engage in his trading activity with the purpose of earning dividends or interest. Petitioner was not, for Federal income tax purposes, a dealer in the securities that he traded.

For the years in issue, petitioner reported income and basis and claimed losses with regard to his trading activity on Schedules C, Profit or Loss From Business, identifying his profession as "Stock Day Trader" in 2000, "Trader" in 2001, and "Day Trader" in 2002. The number of transactions, gross receipts, total basis, and losses with respect to petitioner's trading activity for each of the years in issue were as follows:

| Year | No. of Trans. | Gross Receipts | Total Basis | Direct Losses | Total Losses |
|------|------|------|------|------|------|
| 2000 | 118 | $14,487,667 | $16,409,654 | $1,921,987 | $1,978,747 |
| 2001 | 81 | 655,764 | 993,906 | 338,142 | 377,388 |
| 2002 | 53 | 1,788,341 | 2,040,663 | 252,322 | 252,322 |

The total losses indicated above include allowable interest expenses claimed by petitioner in the amounts of $56,760 for 2000 and $39,246 for 2001. On his returns for the years in issue, petitioner did not elect to use a "mark to market" method of accounting for his trading activity. Petitioner reported income and expenses associated with his medical practice, identifying his profession as "Physician" in all years, on Schedules C separate from those reporting his trading activity.

From losses sustained in his trading activity, petitioner claimed net operating loss (NOL) carryovers in the amounts of $545,907 in 2001 and $2,027,136 in 2002. He used the claimed NOL carryovers to offset his reported net income from his medical practice in those years.

## Discussion

As a general rule, any loss sustained in a business or other profit-seeking activity by a taxpayer during the taxable year for which the taxpayer is not compensated by insurance or otherwise is allowed as a deduction in calculating the taxpayer's taxable income.  Sec. 165(a).  However, losses from sales or exchanges of capital assets are allowed only to the extent allowed in sections 1211 and 1212.  Sec. 165(f).  Section 1211(b) places limitations on the allowability of capital losses for individuals as follows:

> SEC. 1211(b).  Other Taxpayers.--In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus (if such losses exceed such gains) the lower of--
>
> (1) $3,000 * * *, or
>
> (2) the excess of such losses over such gains.

If capital losses exceed capital gains by more than $3,000, the excess may be carried forward to later taxable years.  Sec. 1212(b).  Section 172 permits a deduction in a current year for the full amount of net operating loss carrybacks or carryovers from previous years, as long as taxable income for the current year is not less than zero.  Sec. 172(a), (b)(2).  However, net capital losses that are carried forward may be deducted only in later tax years subject to the limitations of section 1211(b), which allows capital losses only to the extent of capital gains,

plus up to $3,000 for individuals each year.  Secs. 172(d)(2), 1211(b); see <u>Fortner v. Commissioner</u>, T.C. Memo. 1993-195.

Because capital gains and losses are those sustained in the disposition of capital assets, we consider whether the securities held by petitioner in relation to his trading activity were capital assets.  Section 1221 defines the term "capital asset" as follows:

> SEC. 1221(a).  In General.--For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include--
>
> (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

Because they deal in securities held primarily for sale to customers in the ordinary course of their trade or business, dealers in securities need not treat securities as capital assets.  <u>King v. Commissioner</u>, 89 T.C. 445, 458 (1987).  However, because traders buy and sell securities on their own accounts and have no customers, securities held by traders are capital assets for Federal income tax purposes.  <u>Id.</u>

Petitioner and respondent have stipulated that petitioner was a trader and not a dealer with regard to his securities trading activity during the years in issue.  The courts have consistently held, in keeping with the definition of capital

asset under section 1221, that the character of gains or losses from a taxpayer's buying and selling securities on his own account is capital and not ordinary, even though the taxpayer may be engaged in a trade or business with regard to such trading activity. See, e.g., Marrin v. Commissioner, 147 F.3d 147, 151 (2d Cir. 1998), affg. T.C. Memo. 1997-24; King v. Commissioner, supra at 458. Thus, the losses that petitioner sustained as a securities trader buying and selling stocks are capital losses, not ordinary losses. He may not offset his ordinary income in a taxable year, except to the extent of $3,000, with the capital losses sustained in that year. Secs. 172(d)(2), 1211(b). Because the amounts claimed as NOL carryovers were capital losses, respondent correctly disallowed the NOL carryover deductions as offsets to petitioner's ordinary income in 2001 and 2002.

Petitioner may offset any capital gains he had in the years in issue with his capital losses, and he may take an additional capital loss deduction of up to $3,000 per year for the excess losses that cannot be offset by capital gains. Sec. 1211(b). His nondeductible capital losses may be carried over to be deducted from capital gains in subsequent years. Sec. 1212(b). Because the losses sustained by petitioner in relation to his trading activity are capital and not ordinary in character, such excess capital losses carried over are deductible only in

subsequent years to the extent he has capital gains, plus excess losses of up to $3,000.  Secs. 172(d)(2), 1211(b); see also <u>Flora v. Commissioner</u>, T.C. Memo. 1965-64.

Respondent also determined accuracy-related penalties under section 6662(a) for a substantial understatement of income tax on petitioner's income tax returns for the years in issue.  Under section 7491(c), respondent has the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).

Under section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax due to any substantial understatement of income tax.  Sec. 6662(b)(2).  An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  The understatement is reduced to the extent that the taxpayer (1) has substantial authority for the tax treatment of the item or (2) adequately disclosed his position and has a reasonable basis for such position.  Sec. 6662(d)(2)(B).

In this case, the understatement on petitioner's returns meets the section 6662(d)(1)(A) definition of "substantial", so respondent has met that burden of production.  Petitioner has not cited any substantial authority to support his argument that his

losses from day trading are deductible from his ordinary income. There is no reasonable basis for his treatment of the losses as ordinary. Thus there is no reduction of petitioner's understatement of tax that is subject to the section 6662(a) penalty. See sec. 6662(d)(2)(B).

The accuracy-related penalty under section 6662(a) is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made by taking into account all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his or her proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a tax professional. See id. Petitioner has presented no evidence that he acted in reasonable reliance on the advice of a tax professional in asserting the position taken on his returns or that he otherwise acted with reasonable cause or in good faith. Therefore, the penalties for substantial understatement of tax are sustained for 2000, 2001, and 2002.

To reflect the foregoing,

Decision will be entered

under Rule 155.